IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

JOANN RIVETT,                        )
                                     )
v.                                   )    No. 2:11-0111
                                     )
CAROLYN W. COLVIN,                   )
    Acting Commissioner of           )
    Social Security[1]               )


To: The Honorable John T. Nixon, Senior District Judge

## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is not supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for "judgment on the pleadings" (Docket Entry No. 9) should be GRANTED to the extent that the case should be remanded as provided herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as the defendant in this case.

## I. INTRODUCTION

In July 2006, the plaintiff protectively filed an application for DIB, alleging a disability onset date of October 15, 2005, due to anxiety, depression, fibromyalgia, sleep apnea, calcium deficiency, and irritable bowel syndrome. (Tr. 13, 129, 212-17, 239-54.) Her application was denied initially and upon reconsideration. (Tr. 91-92, 121-23, 126-29.) The plaintiff appeared and testified at a hearing before Administrative Law Judge George L. Evans, III, ("ALJ") on November 18, 2008. (Tr. 73-90.) On April 15, 2009, the ALJ entered an unfavorable decision. (Tr. 106-15.) The plaintiff filed a request for review of the ALJ's hearing decision, and on October 26, 2009, the Appeals Council entered an order remanding the case to the ALJ. (Tr. 117-20.) The Appeals Council's order specified several reasons for remand, including "new and material evidence" from the Department of Veterans Affairs ("VA"), "indicat[ing] that the [plaintiff] was granted entitlement to individual unemployability at the 100 percent rate effective September 15, 2008 due to fibromyalgia." (Tr. 118.)

Upon remand, a second hearing was held before the ALJ on May 25, 2011 (tr. 31-72), and the ALJ entered a second unfavorable decision on June 3, 2011. (Tr. 13-25.) On September 12, 2011, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.)

## II. BACKGROUND

The plaintiff was born on January 12, 1958 (tr. 239), and she was 47 years old as of her alleged disability onset date. She is married with no children, attended but did not complete college,

and served in the United States Air Force.² (Tr. 34, 38, 212-13, 269.) She has worked in military and civilian jobs as an administrative assistant, personnel clerk, and personnel clerk supervisor. (Tr. 38, 66, 269-76.) She was medically discharged from the military in November 2005 with service connected disabilities including, *inter alia*, fibromyalgia, sleep apnea, and major depressive disorder. (Tr. 21, 204-11.) In January 2009, she was awarded individual unemployability benefits by the VA at the 100% rate effective September 15, 2008.³ (Tr. 93-102.)

**A. Chronological Background: Procedural Developments and Medical Records**

The plaintiff received the majority of her medical care at VA clinics and hospitals. (Tr. 382-418, 474-85, 498-520, 578-777, 867-1120.) She received frequent treatment for fibromyalgia as well as osteoarthritis primarily in her feet, hips, and spine. (Tr. 100-01, 206-08, 400-18, 474-80, 507-14, 548-72, 580-603, 627-777, 988-89.) She also received treatment for sleep apnea and bunions, and she had arthroscopic knee surgery in 2011. (Tr. 387, 406-09, 413-18, 474-79, 508-13, 580-603, 612-13, 649-50, 668-70, 694-95, 839, 882, 943, 999-1113, 1115-20.)

On February 22, 2011, Dr. Horace Watson, an orthopaedic specialist, performed a consultative physical examination. (Tr. 839.) The plaintiff reported experiencing "chronic pain" in her neck, low back, lower extremities, shoulders, elbows, wrists, knees, and feet. *Id.* On

---

² The plaintiff testified that she served in the Air Force for twenty-seven years with sixteen years of active duty and the remainder in the Reserve and the Guard. (Tr. 45.)

³ In its January 2009 decision, the VA found that the plaintiff had service-connected disabilities of "sleep apnea at 50 percent, fibromyalgia at 40 percent, and major depressive disorder at 30 [percent] with a combined evaluation of 80 percent." (Tr. 100.) These findings led the VA to conclude that the plaintiff was entitled to individual unemployability benefits at the 100% rate. (Tr. 94, 100.)
3

examination, she demonstrated full range of motion in her spine and joint extremities with 5/5 motor function in her extremities, negative straight leg raises, no muscular atrophy or weakness, and normal deep tendon reflexes. *Id.* She had 50% range of motion of the metatarsophalangeal joint of her great toe on both feet. *Id.* Dr. Watson completed an assessment of the plaintiff's physical ability to do work-related activities in which he opined that she could lift/carry up to twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for three hours each in an eight-hour workday; occasionally use her hands to reach, handle, finger, feel, push, and pull; occasionally use her feet to operate foot controls; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; but never climb ladders or scaffolds. (Tr. 833-36.) He also opined that she could never be exposed to unprotected heights or moving mechanical parts; could occasionally operate a motor vehicle; and could occasionally be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme temperatures. (Tr. 837.)

In addition to her physical impairments, the plaintiff also received psychiatric treatment for depression. (Tr. 362-65, 429-32, 443-47, 488-97.) In 2005, she was assigned a Global Assessment of Functioning ("GAF") score of 45, indicating serious symptomatology. (Tr. 400-04.) In September 2006, her treating psychologist, Dr. Stephen Moore, diagnosed her with major depressive disorder. (Tr. 488, 493-94.) In December 2006, Dr. Moore described her "multiple medical and psychiatric problems" as "chronic in nature" and opined that it would be "difficult for her to handle the cognitive, physical and psycho-social aspects of civilian employment." (Tr. 488.) Dr. Moore completed an assessment of the plaintiff's mental limitations and opined that she had "poor" abilities in a number of work-related areas, including social functioning, concentration, persistence, and pace,

and the ability to adapt. (Tr. 489-91.) DDS psychological consultants opined that the plaintiff had no more than mild to moderate mental limitations. (Tr. 448-73, 521-38, 825-31.)

**B. Hearing Testimony**

At the second hearing held on May 25, 2011, the plaintiff was represented by counsel, and the plaintiff and the vocational expert ("VE"), Katharine Bradford, testified. (Tr. 31-72.) The plaintiff testified that she worked in administrative positions while in the Air Force and that she was "denied a promotion because of [her] inabilities to do [her] duties." (Tr. 38-39.) She explained that "medical people and [her] supervisors in consensus determined that [she] couldn't perform the responsibilities of [her] job" and that "they thought it was in [her] best interest to go for a medical retirement." (Tr. 40.) She said that, in the six months before her retirement, she "did not miss any significant amount of work" but that she "[was not] functional at work." (Tr. 44.) She testified that, after retiring from the military, she attempted to work as a cashier at Lowe's for two months but was unable to perform the work. (Tr. 42-43.) She testified that she receives approximately $2,600 a month in benefits from the VA. (Tr. 35, 48.)

The plaintiff testified that fibromyalgia, osteoarthritis, depression, and sleep apnea prevent her from being able to work. (Tr. 41-42.) She explained that fibromyalgia causes extreme pain in her joints, particularly in her hands, shoulders, knees, and hips. (Tr. 50.) She related that it is "extremely painful" to squat or lift and that it is painful to sweep, vacuum, mop, carry laundry, or wash dishes. *Id.* The plaintiff said that she tries to exercise but is not able to do so consistently due to pain and that she also has difficulty handwriting, typing, and using a computer mouse. (Tr. 51-52, 57.) She testified that she takes a nap "almost every single day" due to physical fatigue caused by

5

sleep apnea and side effects from her medications. (Tr. 56.) She said that she has a driver's license and is able to drive and that her hobbies include making greeting cards, reading, bird watching, and gardening. (Tr. 35-37.) The plaintiff testified that "towards the end of [her] military career . . . she started becoming depressed and . . . emotionally unstable and incapable of doing [her] job." (Tr. 54.) She said that she does not trust people and does not like being around people and that she has difficulty concentrating. (Tr. 53-54.) She related that she receives mental health therapy and takes antidepressant medication. (Tr. 54.)

The VE classified the plaintiff's past work as a "supervisor, personnel clerk" as sedentary and skilled; her past work as a personnel clerk as sedentary and semi-skilled; and her past work as an administrative assistant as sedentary and skilled. (Tr. 66.) The ALJ asked the VE a series of hypothetical questions, which taken together, describe an individual with the residual functional capacity to perform work at the light exertional level, who must be able to sit or stand at will, can occasionally bend, stoop, or reach overhead, can never climb or crawl, cannot perform frequent fine manipulation with the upper extremities, cannot perform frequent operation of foot controls, and is limited to jobs that are not dependent on close interaction with the public, coworkers, or supervisors. (Tr. 66-68.) The VE testified that a person with these limitations could not perform the plaintiff's past relevant work but could work at the light, unskilled level as an assembler, inspector, and machine tender. (Tr. 67-69.) The plaintiff's attorney asked whether adding limitations precluding frequent handling or frequent gross manipulation would affect the availability of jobs, and the VE testified that these limitations would preclude any unskilled work. (Tr. 69-70.) The VE also testified that a person who regularly needed to take 1-2 hour naps during the workday would be unable to perform any work. (Tr. 70.)

# III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on June 3, 2011. (Tr. 13-25.) Based upon the record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 15, 2005 through her date last insured of March 31, 2011 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following combined impairments: fibromyalgia; osteoarthritis; a sleep disorder and depression (20 CFR 404.1520(c)).

***

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

***

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform *light work* as defined in 20 CFR 404.1567(b) except the claimant needs the freedom to change positions between sitting or standing every thirty minutes. The claimant can only occasionally bend, stoop or reach overhead. The claimant can do no climbing or crawling. The claimant can perform less than frequent fine manipulation with the upper extremities, and less than frequent operation of foot controls. The work must not be dependent on close interaction with the public, coworkers or supervisors.

***

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

***

7. The claimant was born on January 12, 1958 and was 47 years old on the alleged onset date, defining the claimant as a younger individual age 18-49. The claimant subsequently changed age category to closely approaching

> advanced age (20 CFR 404.1563). On the date last insured, the claimant was 53 years old, which is an individual closely approaching advanced age.
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> ***
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 15, 2005, the alleged onset date, through March 31, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 15-24.)

## IV. DISCUSSION

**A. Standard of Review**

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial

8

evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of*

*Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See*

*Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden of production shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent

of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

**B. The Five-Step Inquiry**

In this case, the ALJ resolved the plaintiff's claim at step five of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity from the date of her alleged disability onset through her date last insured. (Tr. 15.) At step two, the ALJ determined that the plaintiff had the following impairments, which in combination were severe: fibromyalgia, osteoarthritis, sleep disorder, and depression. *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-17.) At step four, the ALJ determined that the plaintiff was not capable of performing her past relevant work. (Tr. 23.) At step five, the ALJ determined that the plaintiff was capable of working as an assembler, inspector, and machine tender. (Tr. 24.)

**C. The Plaintiff's Assertions of Error**

The plaintiff argues that the ALJ erred by failing to properly consider the fact that she was awarded unemployability benefits by the VA at the 100% rate.[4] Docket Entry No. 10, at 11-12. In its order of remand, the Appeals Council found that the VA's January 2009 decision constituted "new and material evidence" that "ha[d] not been addressed by the [ALJ]" in his prior decision. (Tr. 118.) The VA noted in its decision that "the mode of treatment required to keep [the plaintiff's] fibromyalgia at bay is rather significant and would significantly limit [her] from [the] proper level of alertness and concentration to get and maintain employment." (Tr. 100.)

In the ALJ's decision after remand, he referred to the VA's award of benefits on a few different occasions. The ALJ noted, for example, that the plaintiff reported to Dr. Watson that she had "been declared 100% unemployable by the V.A." due to diagnoses of fibromyalgia, depression, and sleep disorder (tr. 21) and that she had made similar statements to a second consultative examiner. (Tr. 22.) The ALJ also noted the plaintiff's testimony that she "draws about $2,600 per month in [VA] benefits." (Tr. 18.) When assessing the plaintiff's credibility, the ALJ commented that "[s]he is receiving a significant monthly VA benefit" and, without any specific support, he found that "[f]rom a monetary standpoint, it does not appear the [plaintiff] has a financial need to work." (Tr. 20.)

Because the standards used by the VA are different than those used by the Social Security Administration ("SSA"), the VA's decisions regarding whether a person is disabled are not binding

---

[4] The plaintiff also argues that the ALJ "failed to properly consider Dr. Watson's consultative opinion." Docket Entry No. 10, at 12-13. Given the Court's decision herein that the ALJ failed to properly consider the VA's disability determination, the Court finds it unnecessary to address the plaintiff's second issue.

13

on the SSA. *See* 20 C.F.R. § 404.1504 (noting that a disability determination made by another governmental agency is based on its rules and is not binding on the SSA). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6-7. However, the SSA cannot ignore another agency's decision and must consider it when making its own disability determination. *Id*. ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). *See also LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. Appx. 377, 387-88 (6th Cir. Dec. 13, 2013).

The Sixth Circuit has not set forth a specific standard regarding the weight that the SSA should give a 100% disability determination by the VA. *LaRiccia*, 549 Fed. Appx. at 387 (citing *Stewart v. Heckler*, 730 F.2d 1065 (6th Cir. 1984)). However, regardless of the weight afforded, the ALJ "should explain the consideration given to these decisions in the notice of decision." *Id*. (quoting Soc. Sec. Rul. 06-03p). *See also* Report and Recommendation entered in *Shumaker v. Comm'r of Soc. Sec.*, 2013 WL 441060, at *15 (N.D. Ohio Jan. 15, 2013) and adopted by the Court (collecting Sixth Circuit district court cases in which the court "required the ALJ to assign 'some weight to the VA's decision and articulate his or her reasons for finding such.'"). Thus, although the ALJ is not required to give great weight to the VA's disability finding, he should "adequately explain the valid reasons for not doing so." *King v. Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 726 (E.D. Mich. Mar. 28, 2011) (quoting *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)) (noting that "the relative weight to be given [to VA] evidence will vary depending upon the factual circumstances of each case"). *See also LaRiccia*, 549 Fed. Appx. at 388 (quoting Soc. Sec. Rul. 06-03p). Accordingly, courts have routinely remanded cases in which the ALJ failed to properly weigh a governmental or nongovernmental agency's disability decision or failed to articulate valid reasons

for rejecting the decision. *See, e.g., LaRiccia*, 549 Fed. Appx. at 388; *King*, 779 F. Supp. 2d at 726; Reports and Recommendations entered and adopted in *Dellerman v. Comm'r of Soc. Sec.*, 2014 WL 3734393, at *4-5 (S.D. Ohio July 28, 2014); *McPhee v. Comm'r of Soc. Sec.*, 2013 WL 3224420, at *13-14 (E.D. Mich. June 25, 2013); and *Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 718 (S.D. Ohio 2012).

In this case, the ALJ's consideration of the VA's disability determination falls short of the applicable standard. Although the ALJ mentioned the fact that the VA found the plaintiff to be 100% unemployable due to service-connected disabilities, the ALJ did so only cursorily by way of recounting the plaintiff's testimony and statements that she made to consultative examiners. In fact, the ALJ apparently discounted the plaintiff's credibility due to the fact that she receives unemployability benefits from the VA. The ALJ never addressed the VA's written decision explaining its reasons for finding that the plaintiff's impairments precluded her from working. Most importantly, the ALJ never articulated why his disability determination differed from the VA's decision. The ALJ was not required to accept the VA's decision as his own; however, he was required to meaningfully consider the VA's decision and explain whether he was giving any weight to the decision and the reasons for that weight. *See Lowery*, 886 F. Supp. 2d at 718 ("Although the ALJ was not bound by [the VA's] finding, he was required to consider the [VA's] finding and articulate one or more reasons for rejecting that finding."). The ALJ's decision simply does not show sufficient consideration of the VA's decision. *See id.* at 707 ("[M]erely referencing the disability finding of the [VA] does not equate to an analysis of same or a consideration of the evidence. . . ."). *See also McPhee*, 2013 WL 3224420, at *14 ("[T]he ALJ's mere mention of the

state agency determination and his cursory rejection of the determination as 'based on its own rules' is insufficient consideration. . . .").

The defendant makes two arguments that the Court finds unpersuasive. First, the defendant argues that there is evidence in the record that conflicts with the VA's disability determination. Docket Entry No. 11, at 5. However, while this may be true, it is precisely the reason why the ALJ needs to explain his decision regarding the VA's finding. It is the ALJ's role and not the Court's to decide the factual issues at hand and to adequately explain the basis for his decision in order to facilitate appellate review. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."). The defendant's argument would place the Court in the ALJ's role of weighing the evidence and determining which evidence is more credible.

Second, citing cases from other circuits, the defendant argues that the Court should treat this issue analogously to cases in which "a plaintiff's obesity factored indirectly into the ALJ's decision as a part of [a] medical source['s] opinions." Docket Entry No. 11, at 6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). Essentially, the defendant argues that, because the ALJ considered the opinions of consultative examiners who themselves considered the VA's award of benefits, the ALJ's failure to appropriately consider the VA's decision constitutes harmless error. The Court disagrees. First, there is no indication that the consultative examiners' consideration of the VA's decision was any more substantive than the ALJ's. In their reports, the consultative examiners merely recite the plaintiff's statements when providing historical information but make no attempt to reconcile the

16

VA's decision with their own findings. (Tr. 827-31, 839.) Second, the defendant's argument ignores the requirements of Social Security Ruling 06-03p as well as a number of Sixth Circuit cases cited above holding that the ALJ must properly consider a governmental agency's disability determination and articulate valid reasons for rejecting the decision. The Court need not consider "analogous" situations when there is authority specifically addressing the issue at hand.

In arguing against remand, the defendant maintains that it "would serve no useful purpose and would waste scarce administrative resources." Docket Entry No. 11, at 6. However, the defendant presupposes that the ALJ's decision on remand will be the same. Given the ALJ's failure to appropriately consider the VA's disability determination, the Court cannot be so certain. Consequently, the Court concludes that remand is appropriate in this case. Upon remand, the ALJ shall consider the VA's decision finding the plaintiff 100% unemployable due to service-connected disabilities and explain the consideration given to the decision in accordance with the authorities cited above.

## V. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for "judgment on the pleadings" (Docket Entry No. 9) be GRANTED to the extent that the case should be REMANDED in order for the ALJ to explain the consideration given to the VA's disability determination.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is

made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge